UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XIANMING H.,[1] | No. 1:26-cv-02543-TLN-CKD |
| Petitioner, | A# 208-065-859 |
| v. | **ORDER** |
| WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, et al., | |
| Respondents. | |

This matter is before the Court on Petitioner Xianming H.'s ("Petitioner") First Amended Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 12.)  Respondents filed a response and supplement.  (ECF Nos. 8, 14.)  Petitioner replied.  (ECF No. 15.)  For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This matter arises out of Petitioner's challenge to his civil immigration detention.  The facts are not disputed here.  The parties agree that:  Petitioner overstayed a tourist visa; 8 U.S.C. § 1226(a) governs his detention; and Respondents have not provided Petitioner a bond hearing while in detention.  (ECF Nos. 12 at 1, 11; 8 at 1.)

In August 2014, Petitioner entered the United States as a tourist on a visa.  (ECF Nos. 12 at 4; 14-1.)  In 2015, Petitioner applied for asylum, claiming a fear of political persecution in his home country.  (*Id.*)

Petitioner has no pending criminal cases.  (ECF No. 12 at 5.)  His only criminal conviction is a single misdemeanor for driving under the influence in 2025.  (ECF Nos. 14-1 at 2; 15-1 at 1.)  Petitioner has fully resolved the matter, including payment of fines, and completion of a three-month class.  (ECF Nos. 12 at 5; 14 at 3.)

On January 14, 2026, Petitioner exited a courthouse and was heading back to his car, when U.S. Immigration and Customs Enforcement ("ICE") arrested him on an administrative warrant.  (ECF No. 14-1 at 2.)  Petitioner was not subject to an order of removal at the time of his arrest.  Nearly three months later, on April 9, 2026, an immigration judge ordered Petitioner removed.  (ECF No. 1 at 5.)  Petitioner has appealed the order and the appeal remains pending, thus, the order is not final.[2]

Petitioner suffers from medical conditions, including diabetes and chronic headaches, which require monitoring and medication management.  (ECF No. 12 at 5.)  Petitioner claims that he has not received requested medication for his conditions or adequate and necessary medical care while in detention.  (*Id.*)

Petitioner has now been detained for nearly four months without a bond hearing or any opportunity to be heard as to his detention.  (ECF Nos. 12 at 1; 8 at 1.)  Petitioner filed a pro se Petition for Writ of Habeas Corpus to challenge the lawfulness of his civil detention.  (ECF No. 1.)  Thereafter, the Court appointed counsel for Petitioner.  (ECF No. 7.)  Respondents filed an

---

[2]    *See* Automated Case Information, Department of Justice, Executive Office for Immigration Review,  https://acis.eoir.justice.gov/en/caseInformation (last visited May 8, 2026).

opposition.  (ECF No. 8.)  Petitioner's counsel filed a First Amended Petition for Writ of Habeas Corpus.  (ECF No. 12.)  Respondents filed a supplement to their opposition.  (ECF No. 14.)  Petitioner replied.  (ECF No. 15.)  Having been fully briefed, the Court now considers the First Amended Petition for Writ of Habeas Corpus.

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   ANALYSIS

Petitioner claims his detention without a bond hearing violates the Fifth Amendment Due Process Clause.[3]  (ECF No. 12 at 9–10.)  The parties agree that Petitioner is detained under 8 U.S.C. § 1226(a) and he is entitled to a bond hearing.  (ECF Nos. 12 at 11; 8 at 1; 14 at 1.)  However, Respondents contend Petitioner is required to *request* a hearing and he has not exhausted his administrative remedies.  (ECF No. 8 at 1.)  The Court begins with an analysis of prudential exhaustion and then turns to Petitioner's Fifth Amendment claim.

### A.   Prudential Exhaustion

At the outset, the Court is unable to determine whether Petitioner has in fact failed to

---

[3]   Petitioner also asserts his detention violates the Administrative Procedure Act ("APA"). (ECF No. 12 at 11.)  Finding relief warranted under the Fifth Amendment claim, the Court declines to address the APA claim in favor of judicial economy.

exhaust an available administrative remedy or whether he was obstructed from doing so. Respondents point to the Form I-286 Notice of Custody Determination that contains a field to request a bond hearing, which Petitioner refused to sign. (ECF Nos. 14 at 1; 14-4.) However, the Court does not know the circumstances around Petitioner's refusal to sign, nor does the Court know whether Petitioner requested a bond hearing another way. Indeed, there is no contention that the Form I-286 is the only way to request a bond hearing. Petitioner claims he was effectively deprived of any genuine opportunity to pursue administrative relief because he experienced significant barriers to pursuing relief, including language barriers, lack of understanding, and lack of financial resources to obtain counsel. (ECF No. 15 at 2.) Although the Court cannot determine whether Petitioner failed to request a bond hearing or was obstructed from doing so, out of an abundance of caution, the Court assesses prudential exhaustion.

"Under the exhaustion doctrine, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *S.E.C. v. G. C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) (quoting *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 50–51 (1938)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). Section 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (abrogated on other grounds). However, the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Id.*

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Nevertheless, "there are a number of

4

exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C.*, 637 F.2d at 688 n.4.

In consideration of the *Puga* factors, prudential exhaustion is not required here. An administrative record is not necessary to resolve the due process questions presented by Petitioner. Waiver of the prudential exhaustion requirement here will not encourage the deliberate bypass of the administrative scheme in future cases because Respondents have failed to identify the method by which Petitioner was required to have requested a hearing. Further, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (*citing Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)).

Even if exhaustion were required, waiver would be appropriate here to avoid further irreparable harm to Petitioner and further delay in vindicating his constitutional rights. *See, e.g., Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025). Petitioner is suffering irreparable harm as a result of his continued detention, including lack of adequate medical care, which would unnecessarily continue without waiver of exhaustion. Accordingly, the Court will not deny Petitioner's request for habeas relief for failure to exhaust administrative remedies.

B.    Fifth Amendment Due Process Violation

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the

5

procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i.  Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'"  *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here.  He has resided in the United States for over a decade.  At the time of Petitioner's arrest, he was pursuing an asylum application.  Even if he is removable, or his liberty is revocable, his liberty is still protected by due process.  *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693.  Respondents do not dispute Petitioner's liberty interest.  (*See* ECF Nos. 8, 14.)  Thus, Petitioner has a liberty interest protected by due process. The Court next turns to the procedural safeguards that were owed to Petitioner.

### ii.  Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.

First, as explained above, Petitioner has a substantial private interest in his own liberty

6

that is unquestionably affected by Respondents' actions detaining him.  The decade that Petitioner spent at liberty underscores the gravity of its loss.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  Despite his interest in maintaining his liberty, Petitioner has now been detained for nearly four months without any opportunity to be heard as to the justification of his detention.  He is also constrained in obtaining adequate medical care while in detention.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994.  Here, at the time of his arrest, Petitioner was not subject to a final order of removal.  Respondents do not claim that he is a danger to the community or a flight risk.  His only criminal history is a misdemeanor that has been fully resolved.  Without any showing by Respondents of a legitimate interest to detain Petitioner prior to any order of removal, the Court finds there is a serious likelihood Petitioner was erroneously deprived of his liberty interest.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Notice and custody determination

hearings are routine processes for Respondents.  Indeed, they are the very process contemplated under 8 U.S.C. § 1226(a), which Respondents agree governs Petitioner's detention.  Any delay in detention (if justified) for the time to provide a hearing would have been minimal.  Any burden associated with the provision of these processes does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.  Nor do Respondents claim they would be unduly burdened.

Respondents argue that Petitioner did not request a hearing and therefore he is not entitled to relief.  However, the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914))).  Respondents are in control of Petitioner's custody and it is the government's duty to provide sufficient process when depriving an individual of their liberty.[4]  Petitioner has now been detained for nearly four months and he has never been afforded a hearing to determine whether his custody is justified.  Thus, Petitioner has been deprived of an opportunity to be heard at a meaningful time and in a meaningful matter.  The Court finds a clear violation of the Fifth Amendment and Petitioner's procedural due process rights.[5]

**IV.    CONCLUSION**

Petitioner is detained in violation of the Fifth Amendment and he must be released.  Accordingly, IT IS HEREBY ORDERED:

1.  The First Amended Petititon for Writ of Habeas Corpus (ECF No. 12) is GRANTED.

2.  Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is denied as moot.

---

[4]    Additionally, as discussed above, the record is unclear at best as to whether Petitioner did not request a hearing or whether he was obstructed from making such a request.

[5]    The fact that there is now a order of removal for Petitioner does not alter this Court's finding.  The order is not final because Petitioner has appealed.  Additionally, a constitutional claim does not evaporate with a shifting statutory basis for detention authority.  *See Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO, 2025 WL 2996577, at *4 (E.D. Cal. Oct. 24, 2025) (A "change in the applicable statutory authority [for detention] does not render moot petitioner's due process claim"); *Doe v. Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023) ("[J]ust as the "shall" in [§] 1226 gives way to as-applied due process challenges, so too must the 'shall' in [§] 1231(a)." (citing *Demore v. Kim*, 538 U.S. 526 (2003); *Nielsen v. Preap*, 586 U.S. 392 (2019)); *Hernandez Gomez v. Becerra*, No. 23-cv-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023))).

3. Respondents must IMMEDIATELY RELEASE Petitioner Xianming H. (A# 208-065-859) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions.

4. **Respondents must file a notice of compliance with this Order by May 12, 2026.**

5. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

6. The Clerk is directed to serve the **California City Correctional Center** with a copy of this Order.

7. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 8, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE